## THOMPSON v. LEVY BROS. DRY GOODS CO.

### No. 11610.

Court of Civil Appeals of Texas. Galveston.
March 23, 1944.

Rehearing Denied May 11, 1944.

Andrews, Kelley, Kurth & Campbell and Williams, Lee, Kennerly & Cameron, all of Houston, for appellant.

Devereaux Henderson, of Houston, for appellee.

CODY, Justice.

This case originated in the Justice Court where appellee obtained judgment against appellant for the principal sum of $157.50, together with interest and costs. Appellant brought it up for trial de novo in a County Court at Law of Harris County. There, in a trial before the court without a jury, appellee again obtained judgment against appellant for the principal sum of $157.50, interest and costs. And in response to appellant's request, the court filed conclusions of fact and law.

This was an action by appellee to recover from appellant the value of a shipment of dresses lost while in transit. Appellee consigned the shipment of dresses on March 19, 1937, to Sampson, Polay & Goodman, Philadelphia, via Galveston and the Morgan Lines, and via New York City. The shipment originated at Houston, where it was delivered to appellant, the initial carrier, which carrier executed the bill of lading. It is not disputed that the shipment was lost in transit, nor that its value was $157.-50.

Appellant's sole defense was that the contract of carriage, embodied in the bill of lading, the form of which is prescribed by the Interstate Commerce Commission, required as a condition precedent to a recovery for "failure to make delivery" of a shipment that a claim in writing for damages be filed with the carrier within nine months after a reasonable time for delivery has elapsed. That under the circumstances of the shipment in question, a reasonable time for making delivery thereof elapsed on December 29, 1937. And that appellant did not file a written claim until 47 days thereafter. And hence, appellee is not entitled to recover, as there was no compliance with the condition precedent to a recovery.

The provision of the bill of lading invoked by appellant, so far as here involved, reads: "As a condition precedent to recovery, claims must be filed in writing with the * * * carrier issuing this bill of lading, * * * in case of failure to make delivery, within nine (9) months after a reasonable time for delivery has elapsed. * * * Where claims are not filed * * * in accordance with the foregoing provisions, no carrier hereunder shall be liable and such claims will not be paid."

If we are correct in our view that appellant's sixth point should be overruled, the other points presented by it as grounds for reversal of the court's judgment are of no force, and will not be here considered. The sixth point reads: "The error of the trial court in determining that appellee's letter to appellant dated July 9, 1937, constituted notification to appellant of 'the loss sought to be recovered herein' and 'was all that was required by the bill of lading and under the law, by way of notice of said claim'."

The letter of July 9, 1937, thus referred to, reads:

"International-Great Northern Railroad Co.,

"Gentlemen:

"Under date of March 19th we shipped prepaid one carton of dresses, 75 lbs. to Sampson, Polay & Goodman, Inc. 3111 West Allegheny Avenue, Philadelphia, Pa. This shipment consisted of ten dozen (10 dozen) dresses amounting to $157.50. We asked you to ship these prepaid Morgan Line, which no doubt you did.

"Sampson, Polay & Goodman advises us, however, under date of July 6th, that they have no record of receiving our return. Will you be kind enough to prove delivery to these people?

"Please acknowledge receipt of this letter."

It will be noted that the letter fully identified and described the shipment, and stated its value. It informed appellant that the consignee was asserting the claim that

there had been no delivery of the shipment. In other words, the letter in question notified appellant that appellee was in receipt of information which, if true, constituted a breach of appellant's contract of carriage with appellee. By specifying the value of the shipment, appellee notified appellant of the amount of damages sustained, if the shipment was lost.

The demand made by appellee in the letter upon appellant is: "Will you be kind enough to prove delivery to these people?" As appears above, the contract of carriage expressly provides that "in case of failure to make delivery", claims in writing must be filed with the carrier within nine months after a reasonable time for delivery has elapsed, as a condition precedent to recovery thereon. Appellant was accountable to appellee under the contract of shipment in the amount of the value of the shipment unless it could establish that, contrary to the consignee's statement to appellee, the shipment had been delivered. The only rational motive appellee could have had in calling upon appellant "to prove delivery to these people", was to notify appellant that it would be held accountable if it failed to establish such delivery. And the appellant so understood its liability as is evidenced by its answer under date of August 3, 1937, which reads:

"Levy Bros. Dry Goods Co.,

"Gentlemen:

"With reference to your letter of July 9th, requesting arrival and delivery on shipment of one carton dresses made by you on March 19th, consigned to Sampson, Polay & Goodman, Philadelphia, Pa.

"This shipment was forwarded from Houston on our Waybill Ig-2394, March 19th routed IGN-Galveston-Morgan Lines, New York and Penn Lines.

"We are advised by Agent Morgan Lines-New York that shipment, in question, was delivered to the Penn R. R. on March 27th. for forwarding to the consignee at Philadelphia. However, this shipment checked short with agent Penn. Ry. at Philadelphia, Pa. and up to the present time they have no record of receiving the shortage.

"Therefore, it will be in line for you to file your claim for value of this shipment, in the usual manner."

In brief, appellant admitted facts which it knew rendered it liable, on account of the breach of its contract to make delivery to appellee, in the amount of the value of the shipment. And in substance, it notified appellee that it was ready to pay the claim made on it by the letter of July 9, 1937, whenever said claim was presented formally, or "in the usual manner".

Thus it is made to appear that appellant had been fully apprized in writing of appellee's intention to hold appellant accountable if it failed to prove delivery, by the letter of July 9. And it investigated the shipment upon receipt of said letter and established facts which, under the law, rendered it liable to appellee in the amount of the value of the shipment. It might be inferred from appellant's letter that appellant was laboring under the impression that the letter of July 9, 1937, was not a sufficiently formal presentation of appellee's claim, under the provisions of the bill of lading.

The Supreme Court of the United States, in an opinion by Justice Hughes, in Georgia, Florida & Alabama Ry. Co. v. Blish Co., 241 U.S. 190, 36 S.Ct. 541, 543, 60 L.Ed. 948, construed the clause of the bill of lading with respect to the character of the notice which must be filed where there has been a "failure to make delivery", under the contract embodied in the bill of lading. At that time the provision read "four months", where it now reads "nine months", but is otherwise unchanged. The court there stated: "The purpose of the stipulation is not to escape liability, but to facilitate prompt investigation. And, to this end, it is a precaution of obvious wisdom * * * that the carrier by its contracts should require reasonable notice of all claims against it even with respect to its own operations."

And the court went on to hold that no formal written notice was necessary to satisfy the requirement of the provision. A telegram was held by the court in that case to constitute written notice of a shipper's claim. And the court held that it was sufficient to establish the identity of the shipment beyond question, and "was in substance the making of a claim within the meaning of the stipulation,—the object of which was to secure reasonable notice. * * * Granting that the stipulation is applicable and valid, it does not require documents in any particular form. It is addressed to a practical exigency and it is to be construed in a practical way."

When the letter of July 9, 1937, is construed in a practical way, it in every way fulfills the requirements of a written

claim which is required to be filed with the carrier under provision in question. The formal claim which appellant in its letter of August 3, 1937, instructed appellee to file, could have furnished appellant with no information that it did not already possess. And the filing of a formal claim could not reasonably have resulted in any further or additional investigation. From said letter of July 9, appellant already understood that appellee desired that appellant pay for the value of the shipment, if appellant could not "prove" delivery thereof. But appellant desired appellee to present its claim for the value of the shipment in a more formal manner than was done by said letter of July 9, 1937; it wanted appellee to file the "claim for value of this shipment, in the usual manner." But solely for sake of form, because the substance of the claim had been presented by the letter of July 9.

It is appellant's contention that the letter of July 9th was a "tracer" letter. By a "tracer" letter we understand appellant to mean a letter which limits its demand upon the carrier to report where the shipment is, to the end that the shipper may recover it, because the shipper is unwilling to accept damages, but will only accept the merchandise of which the shipment consists. And appellant contends that the letter cannot be construed as a claim for the value of the lost shipment, as no formal request for payment is contained therein. Citing Bronstein v. Payne, 138 Md. 116, 113 A. 648. See, however, Payne v. Smith, Tex. Civ.App., 268 S.W. 243; Hyatt Roller B. Co. v. Pennsylvania Ry. Co., 92 N.J.L. 94, 104 A. 82.

To be sure the letter does not formally call on appellant to pay for the value of the shipment. Appellee was not sure at that time that the contract of carriage had been breached by the carrier. But the demand upon appellant to prove delivery, was a demand to account to appellee for the value of the shipment, if the delivery could not be proved. And the trial court properly so found.

Appellant's Point Six is overruled. And, since the Court's conclusion of fact, which said point challenges, destroys the only ground of appellant's defense, its Points One to Five, inclusive, are overruled without discussion.

The judgment of the trial court ought to be affirmed, and it is so ordered.

Affirmed.

### On Motion for Rehearing.

We have carefully considered appellant's motion for rehearing.

This case, on its facts, is no such case as Bronstein v. Payne, 138 Md. 116, 113 A. 648, 649, relied on strongly by appellant, and referred to in our former opinion. In the Bronstein case the plaintiff was the consignee, and the writing relied upon as constituting a written claim was from the consignee to the carrier, as follows: "Please find B/L and paid freight bill for nine compressed bales of rags, of which we only received eight. Kindly trace the bale that's short * * *."

In testifying in explanation of what a claim tracer was, Bronstein said: "A claim tracer means that the party wants to trace the bale of rags; he don't want the money. * * *"

In the instant case the plaintiff was the consignor. The letter of July 9, 1937, set forth in our original opinion, notifies the carrier that the consignee is claiming that its records indicate no delivery of the shipment had been made. The letter was written at a date so late that the parties knew that, either the shipment had been delivered, the records of the consignee to the contrary notwithstanding, or that it was lost and the carrier must pay therefor. Therefore, the demand in the letter of July 9, 1937, that the carrier prove delivery to the consignee was an invocation by the consignor of the carrier's accountability under the contract of carriage, made at a time when all parties knew that if the carrier failed to prove delivery it would thereby prove its liability for failure to deliver.

The carrier's answer to said letter evidences that it understood the letter of July 9, 1937, as such demand, and in notifying the consignor that it could not prove delivery it invited the consignor to file its claim in the "usual manner". Nothing more could be done by the consignor except to put its demand upon the carrier in a form which the carrier deemed more satisfactory. The carrier already knew all the facts from the letter of July 9, 1937, had made the investigation which showed its liability, and understood from the letter that the consignee demanded payment for the shipment if lost.

The judgment rendered in this case was for the sum of $210.60. As the case was appealed to the county court from the

216

justice court the court's jurisdiction to render judgment was restricted to a sum not in excess of $200. The judgment will be reformed therefore to read for $200 instead of for $210.60. This error in rendering an excessive judgment to the extent of $10.60 was not called to the attention of the trial court, and this appeal was not made necessary in order to correct such error. The costs of the appeal will therefore not be adjudged against appellee, and the judgment heretofore rendered assessing costs against appellant shall not be disturbed. See General Missionary Soc., etc., v. Real Estate, etc., Co., 134 Tex. 564, 136 S.W.2d 599; South Texas Lloyds v. Bryant, Tex. Civ.App., 137 S.W.2d 112.

We overrule appellant's motion for rehearing except that the judgment is reformed as aforesaid, and as reformed the judgment is affirmed.

Reformed and affirmed.

Rehearing refused.