ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. OVERTON. (No. 1419.)

(Court of Civil Appeals of Texas. Texarkana. June 3, 1915. Rehearing Denied June 10, 1915.)

1. CARRIERS ⟵180—CARRIAGE OF INTERSTATE FREIGHT—BILL OF LADING—VALIDITY.

A stipulation, in a bill of lading for an interstate shipment of freight, that claims for loss, damage, or delay must be made in writing within four months after delivery, or in case of nondelivery within four months after a reasonable time for delivery has elapsed, is valid notwithstanding the Carmack amendment (Act June 29, 1906, c. 3591, § 7, pars. 11, 12, 34 Stat. 593 [U. S. Comp. St. 1913, § 8592]), though not supported by an independent consideration.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 815–828; Dec. Dig. ⟵180.]

2. CARRIERS ⟵159—CARRIAGE OF FREIGHT—NOTICE OF LOSS—SUFFICIENCY.

A bill of lading stipulated that claims for loss must be made in writing within four months after delivery. Freight arrived at destination. The consignee notified the consignor by telegram that the freight arrived in bad order. The consignor immediately went to the place of delivery and notified the claim agent of the terminal carrier that he would file a claim, but no claim was filed. The yard agent was also notified by an employé of the consignee that a claim for damages to the freight would be filed. A notation made on the expense bill by the agent of the terminal carrier at the point of destination recited that the freight was more or less damaged. Held, that there was a failure to give notice of a claim for damages and there could be no recovery of damages.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 668–671, 699–703½, 711–714, 718, 718½; Dec. Dig. ⟵159.]

Appeal from Smith County Court; Jesse F. Odom, Judge.

Action by J. W. Overton against the St. Louis Southwestern Railway Company of Texas. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

The appeal is from a judgment in favor of appellee (plaintiff below) against appellant for $995 as the value of a car load of tomatoes lost to appellee as the result of negligence on the part of appellant. It is before this court on an agreed "statement of the case and facts proven," as authorized by article 2112, Vernon's Statutes. In the statement is an admission by appellant as follows:

"It is admitted by defendant St. Louis Southwestern Railway Company of Texas, that the shipment in question was an interstate one from Bullard, in the state of Texas, to Chicago, in the state of Illinois, under a through bill of lading, and that under the Carmack amendment (Act June 29, 1906, c. 3591, § 7, 34 Stat. 593, U. S. Comp. St. Supp. 1911, p. 1307) the evidence made a case of liability against it for the amount of the judgment rendered, unless it is absolved from liability by the provision in the bill of lading and shipping contract set out in said special plea."

The stipulation in the bill of lading (which was in a form approved by the Interstate Commerce Commission June 27, 1908) referred to was as follows:

With reference to the issue made as to whether appellee complied with the stipulation or not, the agreed statement contains the following:

"It was proven upon the trial that said shipment arrived at Chicago, Ill., on the 12th day of June, 1912, and was upon said date delivered to C. F. Love & Co., consignees; that J. W. Overton, plaintiff, resided at Tyler, Smith county, Tex., on and before said date, and has so resided at said place ever since said date; that the defendant, St. Louis Southwestern Railway Company of Texas, the carrier at the point of origin on said date and ever since then has had a local agent at Bullard, Tex., a station 15 miles distant from said Tyler, Tex., where plaintiff has resided as aforesaid, and that defendant's general offices are located at said Tyler, Tex., and that no claim was ever made by plaintiff or by any one for him on said defendant, St. Louis Southwestern Railway Company of Texas, as provided in said provision, as aforesaid, until his original petition was filed in this cause on, to wit, the 18th day of March, 1913, unless the facts hereinafter set out constitute such claim.

"It was further proven on said trial that the Wabash Railroad Company was the carrier at the point of delivery, Chicago, Ill., and that before, at the time of, and ever since said delivery was made to C. F. Love & Co. at Chicago, Ill., on the 12th day of June, 1912, said company maintained a station and had a local agent at said place, and that its general offices were also located at said place, and that no claim, as provided in said bill of lading or shipping contract, has ever been made upon said delivering carrier, unless the facts which will hereafter be set out constitute such claim.

"It was further proven that, upon the arrival and receipt of said shipment by C. F. Love & Co. at destination, they notified plaintiff Overton by wire that same had reached Chicago in bad order, and that he immediately went to said place.

"Plaintiff's testimony upon the subject of filing claim for damages which is uncontroverted is as follows: In answer to direct interrogatory 5, he testified: 'I did not file a written claim with the Wabash Railroad for damages to this car of tomatoes, but I did notify the claim agent of the Wabash Railroad that I would file a claim and requested him to copy the records of the Wabash road as to the condition of the tomatoes when they arrived in Chicago, on expense bill, and gave him my reason for doing so. The yard agent was also notified by Mr. Gould, an employé of C. F. Love & Co.,

that a claim for damages to this car of tomatoes would be filed. This was done in my presence.'

"In answer to cross-interrogatory 6, he testified: 'I have never filed any written claim for damages to this car of tomatoes with the St. Louis Southwestern Railway Company of Texas, or the Wabash Railway, except as above stated by me with the claim agent and yard agent of the Wabash Railway, in answer to direct interrogatory 5. I have never filed a written claim for damages to this car of tomatoes except as above stated. I don't know what my attorneys have done about filing said claim. I turned the claim over to them before leaving Chicago.'

"The notation made on the expense bill by the agent of the Wabash Railroad Company at Chicago, is as follows: 'Delivered 1,097 crates. Crates more or less damaged and broken. H. Euke.'

"It was further proven upon the trial that the freight charge for the shipment was the usual freight rate for like shipments from the point of origin to destination, and that it was not based upon valuation."

Marsh & McIlwaine, of Tyler, and E. B. Perkins and D. Upthegrove, both of Dallas, for appellant. Price & Beaird and Fitzgerald, Butler & Bulloch, all of Tyler, for appellee.

WILLSON, C. J. (after stating the facts as above). [1] Appellant insists that the stipulation in the bill of lading requiring appellee within four months after the tomatoes were delivered in Chicago to make claim in writing to it or to the delivering carrier for the loss he sustained was just and reasonable, and therefore valid; that it conclusively appeared that appellee did not comply with the stipulation; and it further insists that the trial court therefore erred when he refused to give its requested special charge instructing the jury to find in its favor. Appellee, on the other hand, insists that the stipulation was not binding on him, because it operated as limitation of appellant's liability to him and appeared to be without a consideration to support it; and, further, that, if it was binding upon him, it appeared that he had sufficiently complied with it.

We are of opinion appellee's contentions should be overruled and appellant's sustained.

In Stevens & Russell v. St. Louis S. W. Ry. Co., 178 S. W. 810, not yet officially reported, the contract being one for an interstate shipment, this court held a stipulation like the one in question here to be valid, though not supported by a consideration independent of the one on which the contract as a whole rested. The holding was based on rulings made by the federal Supreme Court in M., K. & T. Ry. Co. v. Harriman Bros., 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690; Southern Express Co. v. Caldwell, 21 Wall. 264, 22 L. Ed. 556; and Cau v. T. & P. Ry. Co., 194 U. S. 427, 24 Sup. Ct. 663, 48 L. Ed. 1053—determining (as do other cases which might be cited) that the validity of a stipulation in a contract covering an interstate shipment must be tested by the com-

mon law as interpreted by the federal courts, and, further, that a stipulation like the one in question here, though not supported by a special consideration, is valid if not unreasonable when considered with reference to the facts of a given case. There is nothing in the facts of the case now before us suggesting a reason why the stipulation should not be treated as reasonable.

[2] Appellee's insistence that the notation made by the agent of the delivering carrier on the expense bill at his instance, "was in effect a notice in writing" in compliance with the stipulation, is not believed to be tenable. Even if it should be said, and we think it should not be, that the agent acted for appellee, and not for the carrier, in making the notation, it was not such notice to the carrier as the stipulation entitled it to. Nor was the notice given by appellee to the delivering carrier, nor that given by the agent of the consignees, that a claim for damages to the tomatoes "would be filed," a compliance with the requirement of the stipulation. Kidwell v. Oregon Short Line Ry. Co., 208 Fed. 1, 125 C. C. A. 313; The Queen of the Pacific, 180 U. S. 49, 21 Sup. Ct. 278, 45 L. Ed. 419; Clegg v. St. Louis & S. F. Ry. Co., 203 Fed. 971, 122 C. C. A. 273. In the Kidwell Case, the court said, with reference to a provision in the contract that "claims for loss, damage or detention" should be presented by the shipper to the carrier within ten days from the date of the unloading of certain live stock and before they were mingled with other stock:

"Nor is it a compliance (with the provision) to inform the agent at the place of destination that there will be a claim against the company for damages. To impart the information that a claim will be presented is not to present 'a claim for loss, damage, or detention.' It does not inform the carrier of the nature, extent, amount, or cause of damage. It gives no definite statement of facts upon which an investigation may be had, or which shows that an investigation is required."

The judgment of the court below will be reversed, and the judgment will be here rendered that appellee take nothing by his suit against appellant.